UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2005 FEB -3 P 4: 23

U.S. DISTRICT COURT
DISTRICT OF MASS.

| | |
|---|---|
| SAVINGS BANKS EMPLOYEES ) <br> RETIREMENT ASSOCIATION, ) <br>              ) <br>     Plaintiff, ) <br>              ) <br> v.           ) <br>              ) <br> EAST BOSTON SAVINGS BANK; ) <br> BELMONT SAVINGS BANK; CAPE ) <br> COD FIVE CENTS SAVINGS BANK; ) <br> BRIDGEWATER SAVINGS BANK; ) <br> SOUTH SHORE SAVINGS BANK; and ) <br> WORONOCO SAVINGS BANK, ) <br>              ) <br>     Defendants. ) | CIVIL ACTION NO. 04-11545-EFH |

## SAVINGS BANK EMPLOYEES RETIREMENT ASSOCIATION'S
## MOTION TO COMPEL ANSWERS TO INTERROGATORIES

Pursuant to Fed. R. Civ. P. 37, Plaintiff Savings Bank Employees Retirement Association ("SBERA") hereby moves to treat the interrogatory responses of Defendants East Boston Savings Bank ("ESBS"), Cape Cod Five Cents Savings Bank ("Cape Cod"), South Shore Savings Bank ("South Shore") and Woronoco Savings Bank ("Woronoco")(collectively "Defendant Banks") as incomplete and evasive, and thus a failure to answer, and moves to compel Defendant Banks to fully answer Plaintiff's First Set of Interrogatories.

**Background**

SBERA is an entity created by the Massachusetts General Court for the purpose of administering, on behalf of Massachusetts savings banks, employee retirement plans which are qualified under Section 401 of the Federal Internal Revenue Code.

Defendant Banks are all Massachusetts savings banks which had been long-time participants of SBERA. Each was a sponsor of one or more retirement plans which SBERA administered.

On or about September 24, 1998, SBERA's Board of Trustees passed a resolution providing for an assessment to be imposed on participating banks upon withdrawal. These assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA. The Board of Trustees, made up of member banks, passed the resolution to reduce administrative costs and risks of non-payment by withdrawing banks.

All of the Defendant Banks were aware of the resolution. Prior to the withdrawal of Defendant Banks, other banks had withdrawn from SBERA since the resolution was adopted, and had paid the required assessment. The Defendant Banks have therefore enjoyed the benefits of the resolution.

The Defendant Banks withdrew at various times in late 2003 and early 2004. SBERA assessed withdrawal fees for each of the Defendant Banks. Defendant Banks have refused to pay such fees.

In their Answer, Defendant Banks deny that the "assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA." See Answer at ¶ 3; Complaint at ¶ 3. They have also raised, as an affirmative defense, that "Plaintiff's purported assessment constitutes an impermissible penalty that does not reasonably estimate the potential damages resulting from defendants' withdrawal from the SBERA plan." See Answer, Affirmative Defenses, at ¶ 2.

**SBERA's Interrogatories**

On October 7, 2004, SBERA served Savings Bank Employees Retirement Association's First Set of Interrogatories (the "Interrogatories") on each of the Defendant Banks (each set of the Interrogatories was identical for each Defendant Bank, with the exception of the individual bank's name) (a copy of the Interrogatories to ESBS is attached hereto at Exhibit A). The Interrogatories included the following:

Interrogatory No. 1:

State the basis for the denials contained in Paragraph 3 of your Answer that "[t]hese assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA," and that "[t]he Board of Trustees passed the resolution to reduce administrative costs and risks of non-payment by withdrawing banks," and identify all documents relating to such denials.

Interrogatory No. 5:

State the basis for the second affirmative defense contained in your Answer that "Plaintiff's purported assessment constitutes an impermissible penalty that does not reasonably estimate the potential damages resulting from defendants' withdrawal from the SBERA plan," and identify all documents relating to such affirmative defense.

Interrogatory No. 8:

Identify any person or entity (including the other Defendant Banks) with whom you discussed any of the following subjects and for each person or entity identify, list the date of each communication and the substance of such communication:

    a.    your plans for withdrawal from SBERA;

    b.    your withdrawal from SBERA;

  c.  the resolution;

  d.  the assessment of any fee by SBERA related to your withdrawal;

  e.  your intention to pay or not to pay any fees assessed by SBERA related to your withdrawal.

**Defendant Banks' Incomplete Answers to Interrogatories**

Each of Defendant Banks provided identical answers to Interrogatory Nos. 1 and 5 (which answers are also nearly identical to each other) as follows:

Answer No. 1

Based on our experience and knowledge in the industry [Defendant Bank] believed that the costs potentially incurred by SBERA as a result of its withdrawal from SBERA do not remotely approach the withdrawal penalty SBERA assessed against [Defendant Bank]. Stated differently, there is no correlation between the termination fee SBERA charged [Defendant Bank] and the departing banks, and the costs SBERA incurred or will likely incur as a result of their withdrawal. Because the withdrawal fees SBERA assessed were so disproportionately high relative to any incurred costs or potentially incurred costs, [Defendant Bank] and the departing banks believe that the withdrawal fees were not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Answer No. 5

SBERA demanded a withdrawal fee that bears no reasonable relationship to its anticipated or actual costs. This withdrawal fee is a penalty designed to prevent the banks from withdrawing from SBERA. There is no correlation between the termination fees SBERA charged [Defendant Bank] and the departing banks and the costs SBERA incurred or will likely incur as a result of the withdrawal. Because the withdrawal fee SBERA assessed was so disproportionately high relative to any incurred costs or potentially incurred costs, [Defendant Bank] and the departing banks believe that the withdrawal fee was not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

In response to Interrogatory No. 8, the responses of the Defendant Banks were as follows:

ESBS Answer No. 8:

Robert F. Verdonck, President & CEO, East Boston Savings Bank

Cape Cod Answer No. 8:

1. Chris Hulse, Senior Vice President, SBERA.

2. Chris Cappello, Managing Director, Retirement Services, MassMutual.

3. Ellen Strandberg, Regional V.P., Sales Management, Fidelity.

4. Arthur Warren, Esq.

5. Robert Verdonck of Cape Cod Five Cents Savings Bank, Angela Derouin of Woronoco Savings Bank.

6. Cape Cod Five 401(d) Taskforce

7. Cape Cod Five Senior Officers

8. Human Resources Department Staff

South Shore Answer No. 8:

1. Arthur Warren, Esq.

2. Belmont Savings Bank

3. Cape Cod Five Cents Savings Bank

4. East Boston Savings Bank

5. Woronoco Savings Bank

6. John Boucher, President/COO of South Shore Savings Bank

Woronoco Answer No. 8:

Arthur F. Warren, Arthur Warren Associates

Christopher Cappello, Managing Director, and Sheila Pici, Retirement Plan Services, MassMutual Financial Services

Cornelius Mahoney, President and Debra Murphy, EVP Chief Financial Officer, as well as the Board of Directors of the Bank Woronoco Savings Bank.

(A copy of each of Defendant Banks' Answers to Interrogatories 1, 5 and 8 is attached hereto at Exhibit B).

### By Providing Incomplete and Evasive Answers, Defendant Banks Have Failed to Answer

The Answers provided by the Defendant Banks are incomplete. Interrogatory Nos. 1 and 5 request that Defendant Banks state the basis for their belief that the withdrawal fees assessed by SBERA are penalties and not reasonably related to actual costs. Defendant Banks have provided no bases for these statements and have merely reiterated the conclusory statements of their Answer. While each cites to its apparently identical "experience and knowledge in the industry," none explains what that experience and knowledge told them about the issue on the table. Indeed, since the issue seems to be one of pension plan administration, not banking, SBERA is left to wonder what the banking industry might know that is different from its oft-repeated explanation to the banks why the fees are reasonable.

Defendant Banks' Answers to the Interrogatories are incomplete and evasive, and therefore, pursuant to Rule 37(a)(3) of the Federal Rules of Civil Procedure, should be treated as a failure to answer. Defendant Banks have no legitimate reason not to provide the bases for their purported defenses.

Pursuant to Local Rule 26.5:

> "[w]hen an interrogatory calls upon a party to 'state the basis' of or for a particular claim, assertion, allegation, or contention, the party shall
>
> (a)    identify each and every document, . . . which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;
>
> (b)    identify each and every communication which forms any part of the source of the party's information regarding the alleged facts or legal conclusions referred to by the interrogatory;
>
> (c)    state separately the acts or omissions to act on the part of any person (identifying the acts or omissions to act by stating their nature, time, and place

and identifying the persons involved) which form any part of the party's information regarding the alleged facts or legal conclusions referred to in the interrogatory; and

(d) state separately any other fact which forms the basis of the party's information regarding the alleged facts or conclusions referred to in the interrogatory.

Defendant Banks have not followed Local Rule 26.5 in answering SBERA's interrogatories. On the contrary, their Interrogatory Answers are nothing more than reiterations of the conclusory statements contained in their Answer. If, in fact, Defendant Banks have no basis for their denial and affirmative defense, they are obligated to say so.

Defendant Banks' Answers to Interrogatory No. 8 are likewise incomplete. The Interrogatory requests information about specific communications had by individual Defendant Banks and others, their date and substance. Defendant Banks' Answers do not provide dates of communications with the individuals listed, nor the substance of such communications, and in some instances, only list the name of a bank and identify no individual associated with that bank. In the case of the Answer of EBSB, only Robert Verdonck, President of EBSB was listed, which makes no sense, unless he is prone to talking to himself.

SBERA has made repeated and reasonable efforts to resolve this discovery dispute and has given the Defendant Banks sufficient time to provide full and complete responses to the Interrogatories. On December 21, 2004, counsel for SBERA wrote to counsel for Defendant Banks to request that they more fully respond to the Interrogatories. See December 22, 2004 Letter from Matos to Longton (attached hereto at Exhibit C). In a December 28, 2004 e-mail, counsel for Defendant Banks stated "while we contend that our responses to SBERA's interrogatories are complete, we are currently following up with our clients to ensure that all responsive information has been provided to you." See December 28, 2004 e-mail from Longton to Matos (attached hereto at Exhibit D). Counsel for Defendant Banks made no further response.

On January 12, 2005, counsel for SBERA again wrote to Defendant Banks' counsel requesting that the Defendant Banks' interrogatory responses be supplemented by January 19, 2005. See January 12, 2005 Letter from Matos to Longton (attached hereto at Exhibit E).

On January 26, 2005, SBERA's counsel received a letter from counsel for Defendant Banks stating that there would be no further information forthcoming. See January 25, 2005 Letter of Longton to Matos (attached hereto at Exhibit F).

Having attempted to resolve this discovery dispute without resort to the Court, SBERA is entitled to full and complete responses to its discovery requests.

WHEREFORE, SBERA respectfully requests that the Court order Defendant Banks to fully respond to the SBERA's First Set of Interrogatories and order Defendant Banks to pay SBERA's fees and costs associated with bringing this Motion, and grant such other relief the Court deems just and appropriate.

SAVINGS BANK EMPLOYEES RETIREMENT ASSOCIATION,

by its attorneys,

CERTIFICATE OF SERVICE
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail-hand on Feb. 3, 2005

Arthur G. Telegen, BBO # 494140
Alicia Alonso Matos, BBO # 651154
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 832-1000

Dated: February 3, 2005