UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVINGS BANKS EMPLOYEES RETIREMENT ASSOCIATION,<br><br>Plaintiff,<br><br>v.<br><br>EAST BOSTON SAVINGS BANK; BELMONT SAVINGS BANK; CAPE COD FIVE CENTS SAVINGS BANK; BRIDGEWATER SAVINGS BANK; SOUTH SHORE SAVINGS BANK; and WORONOCO SAVINGS BANK,<br><br>Defendants. | CIVIL ACTION NO. 04-11545-EFH |

## SAVINGS BANK EMPLOYEES RETIREMENT ASSOCIATION'S FIRST SET OF INTERROGATORIES TO DEFENDANT EAST BOSTON SAVINGS BANK

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Plaintiff Savings Bank Employees Retirement Association ("SBERA") hereby requests that Defendant East Boston Savings Bank respond, within the time prescribed by the Rules, to all of the interrogatories set forth below.

### DEFINITIONS

1.    "East Boston Savings Bank," "you," "your" refer to the Defendant East Boston Savings Bank, its agents, representatives, attorneys, and/or any other person acting upon its behalf.

2.    "Defendant Banks" refer to Defendants East Boston Savings Bank, Belmont Savings Bank, Cape Cod Five Cents Savings Bank, Bridgewater Savings Bank, South Shore Savings Bank, and Woronoco Savings Bank.

3.    "SBERA" refers to the Plaintiff Savings Bank Employees Retirement Association.

4.    "This Action" refers to the above-captioned civil action pending before the United States District Court for the District of Massachusetts, Civil Action No. 04-11545-EFH.

5.    "Answer" means the Defendants' Answer and Affirmative Defenses filed by the Defendant Banks in this Action.

6.    "The resolution" refers to the resolution passed by SBERA's Board of Trustees on September 24, 1998.

7.    "Relate(s) to" or "relating to" means containing, recording, discussing, mentioning, noting, evidencing, memorializing, analyzing, describing, commenting upon, referring to, generated in connection with, or tending to prove of disprove, any of the matters set forth.

8.    "And" and "or" mean, where the context permits, "and/or."

9.    "All" and "any" mean, where the context permits, "any and all."

10.    Words used in the singular shall, where the context permits, be deemed to include the plural, and words in the plural shall, where the context permits, be deemed to include the singular.

## INSTRUCTIONS

1.    In addition to information currently in your possession or custody, you are obligated to provide any information within the scope of these interrogatories that you do not presently possess but can obtain through reasonable effort.

2.    Except where otherwise stated (as, for example, by the use of the word "ever" or the phrase "at any time" or by the designation of specific dates), or where the context requires otherwise, each interrogatory refers to the time period commencing January 1, 1998, and continuing to and including the date of the response.

3.    You are under a continuing obligation to supplement or amend your responses to these interrogatories.

4.    As to any information requested herein but withheld on a claim of privilege, please state the following:

      a.    the date of the information;

      b.    the subject matter of the information;

      c.    the identity of all persons who have knowledge of the information;

      d.    the identity of all persons to who the information was imparted or have had disclosed to them the information in any form;

      e.    if the information is contained in any document, the title of the document, the date of the document, and the identities of the drafters, recipients and/or possessors of the document; and

      f.    sufficient information regarding the grounds for withholding the information to explain the claim of privilege.

## INTERROGATORIES

Interrogatory No. 1:

State the basis for the denials contained in Paragraph 3 of your Answer that "[t]hese assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA," and that "[t]he Board of Trustees passed the resolution to reduce

administrative costs and risks of non-payment by withdrawing banks," and identify all documents relating to such denials.

Interrogatory No. 2:

State the basis for the denial contained in Paragraph 4 of your Answer that "[t]he Defendant Banks have ...enjoyed the benefits of the resolution," and identify all documents relating to such denial.

Interrogatory No. 3:

State the basis for the denial contained in Paragraph 11 of your Answer that "the Defendant Banks intended to withdraw, did not intend to pay the assessment due upon withdrawal, and nonetheless accepted the benefits of the assessment resolution for many years," and identify all documents relating to such denial.

Interrogatory No. 4:

State the basis for the first affirmative defense contained in your Answer that "Plaintiff's purported assessment violates applicable laws," and identify all documents relating to such affirmative defense.

Interrogatory No. 5:

State the basis for the second affirmative defense contained in your Answer that "Plaintiff's purported assessment constitutes an impermissible penalty that does not reasonably estimate the potential damages resulting from defendants' withdrawal from the SBERA plan," and identify all documents relating to such affirmative defense.

Interrogatory No. 6:

State the basis for the third affirmative defense contained in your Answer that "Plaintiff's claim for violation of Chapter 93A is improvidently pled," and identify all documents relating to such affirmative defense.

Interrogatory No. 7:

State the basis for the fourth affirmative defense contained in your Answer that "Plaintiff's claims are barred, or limited by, the Employee Retirement Income Security Act (ERISA)," and identify all documents relating to such affirmative defense.

Interrogatory No. 8:

Identify any person or entity (including the other Defendant Banks) with whom you discussed any of the following subjects and for each person or entity identify, list the date of each communication and the substance of such communication:

     a.     your plans for withdrawal from SBERA;

     b.     your withdrawal from SBERA;

     c.     the resolution;

     d.     the assessment of any fee by SBERA related to your withdrawal;

     e.     your intention to pay or not to pay any fees assessed by SBERA related to your withdrawal.

SAVINGS BANKS EMPLOYEES
RETIREMENT ASSOCIATION,

By its attorneys,

Arthur G. Telegen, BBO #494140
FOLEY HOAG LLP
Seaport World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
(617) 832-1000

Dated: October 7, 2004

**CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the above document
was served upon the attorney of record for each other
party by mail on October 7, 2004

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| SAVINGS BANK EMPLOYEES RETIREMENT ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-11545 EFH |
| EAST BOSTON SAVINGS BANK; CAPE COD FIVE CENTS SAVINGS BANK; SOUTH SHORE SAVINGS BANK; and WORONOCO SAVINGS BANK, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT EAST BOSTON SAVINGS BANK'S OBJECTIONS AND RESPONSES TO PLAINTIFF SBERA'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, the Defendant East Boston Savings Bank objects and responds to Plaintiff SBERA's First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS

1.  The Defendant East Boston Savings Bank objects to the Interrogatories to the extent that they seek discovery of documents or information beyond the reasonable scope of discovery set forth in Fed.R.Civ.P. 26(b) and to the extent that the Interrogatories seek to impose discovery obligations upon Defendant East Boston Savings Bank which differ from or exceed those set forth in the Federal Rules of Civil Procedure.

2.      Defendant East Boston Savings Bank objects to the Interrogatories to the extent that they seek information that is protected by the attorney client privilege or the doctrine of work product.

3.      No response or objection set forth herein may be deemed an admission that any document or information that the plaintiff requests: (a) exists; (b) is within the possession, custody or control of the Defendant East Boston Savings Bank; (c) is relevant to the subject matter of this lawsuit or is reasonably calculated to lead to the discovery of admissible evidence; and/or (d) is admissible in evidence in this case.

4.      Defendant East Boston Savings Bank objects to the interrogatories to the extent that they are overbroad, vague or ambiguous, or seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORIES

Interrogatory No. 1:

State the basis for the denials contained in Paragraph 3 of your Answer that "[t]hese assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA," and that "[t]he Board of Trustees passed the resolution to reduce administrative costs and risks of non-payment by withdrawing banks," and identify all documents relating to such denials.

**Answer No. 1**

Based on our experience and knowledge in the industry EBSB believed that the costs potentially incurred by SBERA as a result of its withdrawal from SBERA do not remotely approach the withdrawal penalty SBERA assessed against EBSB. Stated differently, there is no correlation between the termination fee SBERA charged EBSB and the departing banks, and the costs SBERA incurred or will likely incur as a result of their withdrawal. Because the

- 3 -

withdrawal fees SBERA assessed were so disproportionately high relative to any incurred costs or potentially incurred costs, EBSB and the departing banks believe that the withdrawal fees were not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 2:

State the basis for the denial contained in Paragraph 4 of your Answer that "[t]he Defendant Banks have...enjoyed the benefits of the resolution," and identify all documents relating to such denial.

**Answer No. 2**

EBSB denied this statement because it does not know what the benefits are to which SBERA is referring. To the extent SBERA is alluding to the fact that other departing banks have paid the penalty, EBSB has determined that it received no benefit as a result of the other banks' withdrawal. To the contrary, the only benefit from the other banks' withdrawals and payments of the withdrawal fees inured directly to SBERA, because SBERA retained the difference between the amount of the penalty and the amount of the costs actually incurred. There is no evidence that any monies received from the departing banks in excess of SBERA's costs were distributed or in any way inured to the remaining banks. Accordingly, contrary to SBERA's allegations, EBSB and the other defendant banks did not receive any benefits as a result of the resolution.

Interrogatory No. 3:

State the basis for the denial contained in Paragraph 11 of your Answer that "the Defendant Banks intended to withdraw, did not intend to pay the assessment due upon withdrawal, and nonetheless accepted the benefits of the assessment resolution for many years," and identify all documents relating to such denial.

### Answer No. 3

With respect to SBERA's statement that defendant banks "accepted the benefits of the assessment resolution" defendants repeat the statement set forth in Answer No. 2.  In terms of SBERA's claim that the defendant banks "...intended to withdraw, did not intend to pay the assessment due upon withdrawal...," EBSB states that it thought it would have to pay reasonably assessed reimbursement for costs incurred by SBERA as a result of EBSB's withdrawal.

Interrogatory No. 4:

State the basis for the first affirmative defense contained in your Answer that "Plaintiff's purported assessment violates applicable laws," and identify all documents relating to such affirmative defense.

### Answer No. 4

SBERA breached its fiduciary duty and committed unfair practices by refusing to transfer the defendant banks' data upon their withdrawal and forcing them to incur significant legal expenses to obtain data that belonged to their plan participants.  SBERA's strategy of holding the departing banks' data hostage to deter and/or complicate the banks' withdrawals is essentially commercial extortion: SBERA withheld the banks' data to cause unnecessary delays in withdrawing, to interfere with the smooth transfer of plan assets, and to force the banks to incur significant legal fees to recover what was rightfully theirs.

SBERA further breached its fiduciary duty by assessing a post-termination penalty on the withdrawing banks.  SBERA's conduct in assessing such fees constitutes unfair and deceptive trade practices because the assessed withdrawal fee bears no reasonable relationship to the anticipated or actual cost to SBERA as a result of the withdrawal.  The assessed fee does not approximate the loss SBERA anticipates.  While SBERA could have ascertained the actual

amount it expended, and assessed a reasonable fee which approximated its actual out of pocket costs, SBERA instead imposed a disproportionately high fee to penalize EBSB and defendant banks for withdrawing.

Further, ERISA prohibits plan assets from being used to pay a termination fee if the arrangement is tantamount to a penalty or if the fee is unreasonable in amount. 20 C.F.R. §2250.408b-2(c). There are also issues of fiduciary conflict under ERISA. Mr. Thomas Forese of Northeast Retirement Services ("NRS") is a plan fiduciary, yet has simultaneously acted as both President of NRS and President and Plan Administrator of SBERA. Forese's personal financial stake in either the plan continuing the use of NRS services, or payment of a termination fee to SBERA, is a conflict under ERISA because ERISA law requires that a fiduciary discharge his or her duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. Additionally, the fact that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS raises several issues related to ERISA's prohibition of certain interested transactions.

Interrogatory No. 5:

State the basis for the second affirmative defense contained in your Answer that "Plaintiff's purported assessment constitutes an impermissible penalty that does not reasonably estimate the potential damages resulting from defendants' withdrawal from the SBERA plan," and identify all documents relating to such affirmative defense.

**Answer No. 5**

SBERA demanded a withdrawal fee that bears no reasonable relationship to its anticipated or actual costs. This withdrawal fee is a penalty designed to prevent the banks from

withdrawing from SBERA. There is no correlation between the termination fee SBERA charged EBSB and the departing banks and the costs SBERA incurred or will likely incur as a result of the withdrawal. Because the withdrawal fee SBERA assessed was so disproportionately high relative to any incurred costs or potentially incurred costs, EBSB and the departing banks believe that the withdrawal fee was not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 6:

State the basis for the third affirmative defense contained in your Answer that "Plaintiff's claim for violation of Chapter 93A is improvidently pled," and identify all documents relating to such affirmative defense.

**Answer No. 6**

SBERA's Chapter 93A claim is improvidently pled because pleading, without articulating any facts that make out an unfair or deceptive practice, or making allegations that at most amount to a breach of contract type of claim, is not sufficient for purposes of Chapter 93A. SBERA merely wanted to plead a count that allowed for multiple damages and attorney's fees; however with no articulation of a factual basis for these claims, EBSB and the other defendant banks contend that it was improvidently pled.

To the extent there is a Chapter 93A violation, it is a violation by SBERA in their attempt to effectuate an unlawful self-help mechanism by holding the withdrawing banks' data hostage and continuing to insist that the banks pay an unenforceable penalty in order to withdraw.

<u>Interrogatory No. 7</u>:

State the basis for the fourth affirmative defense contained in your Answer that "Plaintiff's claims are barred, or limited by, the Employee Retirement Income Security Act (ERISA), and identify all documents relating to such affirmative defense.

**Answer No. 7**

ERISA law requires that a fiduciary discharge their duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. It constitutes a breach of the fiduciary's duty of loyalty and due care under ERISA for a fiduciary to place its own pecuniary interest above the interests of plan participants and beneficiaries. ERISA also enumerates several kinds of transactions which are prohibited where fiduciaries are concerned. A fiduciary cannot use its fiduciary authority, control or responsibility to cause a plan to enter into a transaction in which the fiduciary has an interest which may affect the exercise of its best judgment as a fiduciary. The fact that Mr. Forese acting as NRS president had a personal financial stake in either the plan continuing the use of NRS services or payment of the termination fee to SBERA, and that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS, raises several issues related to ERISA's prohibition of certain interested transactions.

<u>Interrogatory No. 8</u>:

Identify any person or entity (including the other Defendant Banks) with whom you discussed any of the following subjects and for each person or entity identify, list the date of each communication and the substance of such communication:

    a.     your plans for withdrawal from SBERA;

- 8 -

b.      your withdrawal from SBERA;

c.      the resolution;

d.      the assessment of any fee by SBERA related to your withdrawal;

e.      your intention to pay or not to pay any fees assessed by SBERA related to your

withdrawal.

### Answer No. 8

Robert F. Verdonck, President & CEO, East Boston Savings Bank


UNDER THE PENALTIES OF PERJURY, THE FOREGOING IS TRUE TO THE

BEST OF MY KNOWLEDGE AND BELIEF THIS _21 st_ DAY OF DECEMBER, 2004.

_____
Robert F. Verdonck, CEO
East Boston Savings Bank

Counsel for the Defendants,


_____
James J. Marcellino, Esq. (BBO# 318840)
Nicole Colby Longton, Esq. (BBO# 657478)
McDermott Will & Emery, LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4045

### CERTIFICATE OF SERVICE

22 nd   I hereby certify that a copy of the foregoing was served upon counsel of record on this
22 th day of December, 2004.


_____
Nicole Colby Longton, Esq. (BBO# 657478)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| SAVINGS BANK EMPLOYEES RETIREMENT ASSOCIATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>EAST BOSTON SAVINGS BANK; )<br>CAPE COD FIVE CENTS )<br>SAVINGS BANK; SOUTH SHORE )<br>SAVINGS BANK; and )<br>WORONOCO SAVINGS BANK, )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 04-11545 EFH |

## DEFENDANT CAPE COD FIVE CENTS BANK'S OBJECTIONS AND RESPONSES TO PLAINTIFF SBERA'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, the Defendant Cape Cod Five Cents Savings Bank objects and responds to Plaintiff SBERA's First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS

1.    The Defendant Cape Cod Five Cents Savings Bank objects to the Interrogatories to the extent that they seek discovery of documents or information beyond the reasonable scope of discovery set forth in Fed.R.Civ.P. 26(b) and to the extent that the Interrogatories seek to impose discovery obligations upon Defendant Cape Cod Five Cents Savings Bank which differ from or exceed those set forth in the Federal Rules of Civil Procedure.

2.    Defendant Cape Cod Five Cents Savings Bank objects to the Interrogatories to the extent that they seek information that is protected by the attorney client privilege or the doctrine of work product.

3.      No response or objection set forth herein may be deemed an admission that any document or information that the plaintiff requests: (a) exists; (b) is within the possession, custody or control of the Defendant Cape Cod Five Cents Savings Bank; (c) is relevant to the subject matter of this lawsuit or is reasonably calculated to lead to the discovery of admissible evidence; and/or (d) is admissible in evidence in this case.

4.      Defendant Cape Cod Five Cents Savings Bank objects to the interrogatories to the extent that they are overbroad, vague or ambiguous, or seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORIES

Interrogatory No. 1:

State the basis for the denials contained in Paragraph 3 of your Answer that "[t]hese assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA," and that "[t]he Board of Trustees passed the resolution to reduce administrative costs and risks of non-payment by withdrawing banks," and identify all documents relating to such denials.

**Answer No. 1**

Based on our experience and knowledge in the industry Cape Cod Five Cents Savings Bank believed that the costs potentially incurred by SBERA as a result of its withdrawal from SBERA do not remotely approach the withdrawal penalty SBERA assessed against Cape Cod Five Cents Savings Bank. Stated differently, there is no correlation between the termination fee SBERA charged Cape Cod Five Cents Savings Bank and the departing banks, and the costs SBERA incurred or will likely incur as a result of their withdrawal. Because the withdrawal fees SBERA assessed were so disproportionately high relative to any incurred costs or

potentially incurred costs, Cape Cod Five Cents Savings Bank and the departing banks believe that the withdrawal fees were not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 2:

State the basis for the denial contained in Paragraph 4 of your Answer that "[t]he Defendant Banks have…enjoyed the benefits of the resolution," and identify all documents relating to such denial.

**Answer No. 2**

Cape Cod Five Cents Savings Bank denied this statement because it does not know what the benefits are to which SBERA is referring. To the extent SBERA is alluding to the fact that other departing banks have paid the penalty, Cape Cod Five Cents Savings Bank has determined that it received no benefit as a result of the other banks' withdrawal. To the contrary, the only benefit from the other banks' withdrawals and payments of the withdrawal fees inured directly to SBERA, because SBERA retained the difference between the amount of the penalty and the amount of the costs actually incurred. There is no evidence that any monies received from the departing banks in excess of SBERA's costs were distributed or in any way inured to the remaining banks. Accordingly, contrary to SBERA's allegations, Cape Cod Five Cents Savings Bank and the other defendant banks did not receive any benefits as a result of the resolution.

Interrogatory No. 3:

State the basis for the denial contained in Paragraph 11 of your Answer that "the Defendant Banks intended to withdraw, did not intend to pay the assessment due upon withdrawal, and nonetheless accepted the benefits of the assessment resolution for many years," and identify all documents relating to such denial.

### Answer No. 3

With respect to SBERA's statement that defendant banks "accepted the benefits of the assessment resolution" defendants repeat the statement set forth in Answer No. 2. In terms of SBERA's claim that the defendant banks "...intended to withdraw, did not intend to pay the assessment due upon withdrawal...," Cape Cod Five Cents Savings Bank states that it thought it would have to pay reasonably assessed reimbursement for costs incurred by SBERA as a result of Cape Cod Five Cents Savings Bank's withdrawal.

Interrogatory No. 4:

State the basis for the first affirmative defense contained in your Answer that "Plaintiff's purported assessment violates applicable laws," and identify all documents relating to such affirmative defense.

### Answer No. 4

SBERA breached its fiduciary duty and committed unfair practices by refusing to transfer the defendant banks' data upon their withdrawal and forcing them to incur significant legal expenses to obtain data that belonged to their plan participants. SBERA's strategy of holding the departing banks' data hostage to deter and/or complicate the banks' withdrawals is essentially commercial extortion: SBERA withheld the banks' data to cause unnecessary delays in withdrawing, to interfere with the smooth transfer of plan assets, and to force the banks to incur significant legal fees to recover what was rightfully theirs.

SBERA further breached its fiduciary duty by assessing a post-termination penalty on the withdrawing banks. SBERA's conduct in assessing such fees constitutes unfair and deceptive trade practices because the assessed withdrawal fee bears no reasonable relationship to the anticipated or actual cost to SBERA as a result of the withdrawal. The assessed fee does not

approximate the loss SBERA anticipates. While SBERA could have ascertained the actual amount it expended, and assessed a reasonable fee which approximated its actual out of pocket costs, SBERA instead imposed a disproportionately high fee to penalize Cape Cod Five Cents Savings Bank and defendant banks for withdrawing.

Further, ERISA prohibits plan assets from being used to pay a termination fee if the arrangement is tantamount to a penalty or if the fee is unreasonable in amount. 20 C.F.R. §2250.408b-2(c). There are also issues of fiduciary conflict under ERISA. Mr. Thomas Forese of Northeast Retirement Services ("NRS") is a plan fiduciary, yet has simultaneously acted as both President of NRS and President and Plan Administrator of SBERA. Forese's personal financial stake in either the plan continuing the use of NRS services, or payment of a termination fee to SBERA, is a conflict under ERISA because ERISA law requires that a fiduciary discharge his or her duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. Additionally, the fact that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS raises several issues related to ERISA's prohibition of certain interested transactions.

Interrogatory No. 5:

State the basis for the second affirmative defense contained in your Answer that "Plaintiff's purported assessment constitutes an impermissible penalty that does not reasonably estimate the potential damages resulting from defendants' withdrawal from the SBERA plan," and identify all documents relating to such affirmative defense.

### Answer No. 5

SBERA demanded a withdrawal fee that bears no reasonable relationship to its anticipated or actual costs. This withdrawal fee is a penalty designed to prevent the banks from withdrawing from SBERA. There is no correlation between the termination fee SBERA charged Cape Cod Five Cents Savings Bank and the departing banks and the costs SBERA incurred or will likely incur as a result of the withdrawal. Because the withdrawal fee SBERA assessed was so disproportionately high relative to any incurred costs or potentially incurred costs, Cape Cod Five Cents Savings Bank and the departing banks believe that the withdrawal fee was not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 6:

State the basis for the third affirmative defense contained in your Answer that "Plaintiff's claim for violation of Chapter 93A is improvidently pled," and identify all documents relating to such affirmative defense.

### Answer No. 6

SBERA's Chapter 93A claim is improvidently pled because pleading, without articulating any facts that make out an unfair or deceptive practice, or making allegations that at most amount to a breach of contract type of claim, is not sufficient for purposes of Chapter 93A. SBERA merely wanted to plead a count that allowed for multiple damages and attorney's fees; however with no articulation of a factual basis for these claims, Cape Cod Five Cents Savings Bank and the other defendant banks contend that it was improvidently pled.

To the extent there is a Chapter 93A violation, it is a violation by SBERA in their attempt to effectuate an unlawful self-help mechanism by holding the withdrawing banks' data hostage and continuing to insist that the banks pay an unenforceable penalty in order to withdraw.

Interrogatory No. 7:

State the basis for the fourth affirmative defense contained in your Answer that "Plaintiff's claims are barred, or limited by, the Employee Retirement Income Security Act (ERISA), and identify all documents relating to such affirmative defense.

### Answer No. 7

ERISA law requires that a fiduciary discharge their duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. It constitutes a breach of the fiduciary's duty of loyalty and due care under ERISA for a fiduciary to place its own pecuniary interest above the interests of plan participants and beneficiaries. ERISA also enumerates several kinds of transactions which are prohibited where fiduciaries are concerned. A fiduciary cannot use its fiduciary authority, control or responsibility to cause a plan to enter into a transaction in which the fiduciary has an interest which may affect the exercise of its best judgment as a fiduciary. The fact that Mr. Forese acting as NRS president had a personal financial stake in either the plan continuing the use of NRS services or payment of the termination fee to SBERA, and that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS, raises several issues related to ERISA's prohibition of certain interested transactions.

### Answer No. 8

1.    Chris Hulse, Senior Vice President, SBERA.

2.    Chris Cappello, Managing Director, Retirement Services, MassMutual.

3.    Ellen Strandberg, Regional V.P., Sales Management, Fidelity.

4.    Arthur Warren, Esq.

5.  Robert Verdonck of Cape Cod Five Cents Savings Bank, Angela Derouin of Woronoco Savings Bank.

6.  Cape Cod Five 401(k) Taskforce

7.  Cape Cod Five Senior Officers

8.  Human Resources Department Staff

BST99 1433949-2.069465.0011

UNDER THE PENALTIES OF PERJURY, THE FOREGOING IS TRUE TO THE

BEST OF MY KNOWLEDGE AND BELIEF THIS ___15th___ DAY OF DECEMBER, 2004,

*Judith B Geller*

Judith Geller
Vice President/Human Resources
Cape Cod Five Cents Savings Bank

Counsel for the Defendants,

*Nicole Colby Longton*

James J. Marcellino, Esq. (BBO# 318840)
Nicole Colby Longton, Esq. (BBO# 657478)
McDermott Will & Emery, LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4045

### CERTIFICATE OF SERVICE

17      I hereby certify that a copy of the foregoing was served upon counsel of record on this
___th day of December, 2004.

*Nicole Colby Longton*

Nicole Colby Longton, Esq. (BBO# 657478)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAVINGS BANK EMPLOYEES RETIREMENT ASSOCIATION, )<br><br>Plaintiff, )<br><br>v. )<br><br>EAST BOSTON SAVINGS BANK, )<br>CAPE COD FIVE CENTS SAVINGS BANK; )<br>SOUTH SHORE SAVINGS BANK )<br>and WORONOCO SAVINGS BANK, )<br><br>Defendants. ) | CIVIL ACTION<br>NO. 04-11545 EFH |

## DEFENDANT SOUTH SHORE SAVINGS BANK'S OBJECTIONS AND RESPONSES TO PLAINTIFF SBERA'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, the Defendant South Shore Savings Bank objects and responds to Plaintiff SBERA's First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS

1.      The Defendant South Shore Savings Bank objects to the Interrogatories to the extent that they seek discovery of documents or information beyond the reasonable scope of discovery set forth in Fed.R.Civ.P. 26(b) and to the extent that the Interrogatories seek to impose discovery obligations upon Defendant South Shore Savings Bank which differ from or exceed those set forth in the Federal Rules of Civil Procedure.

2.      Defendant South Shore Savings Bank objects to the Interrogatories to the extent that they seek information that is protected by the attorney client privilege or the doctrine of work product.

3.      No response or objection set forth herein may be deemed an admission that any document or information that the plaintiff requests:  (a) exists; (b) is within the possession, custody or control of the Defendant South Shore Savings Bank; (c) is relevant to the subject matter of this lawsuit or is reasonably calculated to lead to the discovery of admissible evidence; and/or (d) is admissible in evidence in this case.

4.      Defendant South Shore Savings Bank objects to the interrogatories to the extent that they are overbroad, vague or ambiguous, or seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

## INTERROGATORIES

Interrogatory No. 1:

State the basis for the denials contained in Paragraph 3 of your Answer that "[t]hese assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA," and that "[t]he Board of Trustees passed the resolution to reduce administrative costs and risks of non-payment by withdrawing banks," and identify all documents relating to such denials.

**Answer No. 1**

Based on our experience and knowledge in the industry South Shore Savings Bank believed that the costs potentially incurred by SBERA as a result of its withdrawal from SBERA do not remotely approach the withdrawal penalty SBERA assessed against South Shore Savings Bank.  Stated differently, there is no correlation between the termination fee SBERA charged South Shore Savings Bank and the departing banks, and the costs SBERA incurred or will likely

incur as a result of their withdrawal. Because the withdrawal fees SBERA assessed were so disproportionately high relative to any incurred costs or potentially incurred costs, South Shore Savings Bank and the departing banks believe that the withdrawal fees were not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 2:

State the basis for the denial contained in Paragraph 4 of your Answer that "[t]he Defendant Banks have...enjoyed the benefits of the resolution," and identify all documents relating to such denial.

**Answer No. 2**

South Shore Savings Bank denied this statement because it does not know what the benefits are to which SBERA is referring. To the extent SBERA is alluding to the fact that other departing banks have paid the penalty, South Shore Savings Bank has determined that it received no benefit as a result of the other banks' withdrawal. To the contrary, the only benefit from the other banks' withdrawals and payments of the withdrawal fees inured directly to SBERA, because SBERA retained the difference between the amount of the penalty and the amount of the costs actually incurred. There is no evidence that any monies received from the departing banks in excess of SBERA's costs were distributed or in any way inured to the remaining banks. Accordingly, contrary to SBERA's allegations, South Shore Savings Bank and the other defendant banks did not receive any benefits as a result of the resolution.

Interrogatory No. 3:

State the basis for the denial contained in Paragraph 11 of your Answer that "the Defendant Banks intended to withdraw, did not intend to pay the assessment due upon

withdrawal, and nonetheless accepted the benefits of the assessment resolution for many years," and identify all documents relating to such denial.

### Answer No. 3

With respect to SBERA's statement that defendant banks "accepted the benefits of the assessment resolution" defendants repeat the statement set forth in Answer No. 2. In terms of SBERA's claim that the defendant banks "...intended to withdraw, did not intend to pay the assessment due upon withdrawal...," South Shore Savings Bank states that it thought it would have to pay reasonably assessed reimbursement for costs incurred by SBERA as a result of South Shore Savings Bank's withdrawal.

Interrogatory No. 4:

State the basis for the first affirmative defense contained in your Answer that "Plaintiff's purported assessment violates applicable laws," and identify all documents relating to such affirmative defense.

### Answer No. 4

SBERA breached its fiduciary duty and committed unfair practices by refusing to transfer the defendant banks' data upon their withdrawal and forcing them to incur significant legal expenses to obtain data that belonged to their plan participants. SBERA's strategy of holding the departing banks' data hostage to deter and/or complicate the banks' withdrawals is essentially commercial extortion: SBERA withheld the banks' data to cause unnecessary delays in withdrawing, to interfere with the smooth transfer of plan assets, and to force the banks to incur significant legal fees to recover what was rightfully theirs.

SBERA further breached its fiduciary duty by assessing a post-termination penalty on the withdrawing banks. SBERA's conduct in assessing such fees constitutes unfair and deceptive

trade practices because the assessed withdrawal fee bears no reasonable relationship to the anticipated or actual cost to SBERA as a result of the withdrawal. The assessed fee does not approximate the loss SBERA anticipates. While SBERA could have ascertained the actual amount it expended, and assessed a reasonable fee which approximated its actual out of pocket costs, SBERA instead imposed a disproportionately high fee to penalize South Shore Savings Bank and defendant banks for withdrawing.

Further, ERISA prohibits plan assets from being used to pay a termination fee if the arrangement is tantamount to a penalty or if the fee is unreasonable in amount. 20 C.F.R. §2250.408b-2(c). There are also issues of fiduciary conflict under ERISA. Mr. Thomas Forese of Northeast Retirement Services ("NRS") is a plan fiduciary, yet has simultaneously acted as both President of NRS and President and Plan Administrator of SBERA. Forese's personal financial stake in either the plan continuing the use of NRS services, or payment of a termination fee to SBERA, is a conflict under ERISA because ERISA law requires that a fiduciary discharge his or her duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. Additionally, the fact that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS raises several issues related to ERISA's prohibition of certain interested transactions.

Interrogatory No. 5:

State the basis for the second affirmative defense contained in your Answer that "Plaintiff's purported assessment constitutes an impermissible penalty that does not reasonably estimate the potential damages resulting from defendants' withdrawal from the SBERA plan," and identify all documents relating to such affirmative defense.

**Answer No. 5**

SBERA demanded a withdrawal fee that bears no reasonable relationship to its anticipated or actual costs. This withdrawal fee is a penalty designed to prevent the banks from withdrawing from SBERA. There is no correlation between the termination fee SBERA charged South Shore Savings Bank and the departing banks and the costs SBERA incurred or will likely incur as a result of the withdrawal.    Because the withdrawal fee SBERA assessed was so disproportionately high relative to any incurred costs or potentially incurred costs, South Shore Savings Bank and the departing banks believe that the withdrawal fee was not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 6:

State the basis for the third affirmative defense contained in your Answer that "Plaintiff's claim for violation of Chapter 93A is improvidently pled," and identify all documents relating to such affirmative defense.

**Answer No. 6**

SBERA's Chapter 93A claim is improvidently pled because pleading, without articulating any facts that make out an unfair or deceptive practice, or making allegations that at most amount to a breach of contract type of claim, is not sufficient for purposes of Chapter 93A. SBERA merely wanted to plead a count that allowed for multiple damages and attorney's fees; however with no articulation of a factual basis for these claims, South Shore Savings Bank and the other defendant banks contend that it was improvidently pled.

To the extent there is a Chapter 93A violation, it is a violation by SBERA in their attempt to effectuate an unlawful self-help mechanism by holding the withdrawing banks' data hostage and continuing to insist that the banks pay an unenforceable penalty in order to withdraw.

Interrogatory No. 7:

State the basis for the fourth affirmative defense contained in your Answer that "Plaintiff's claims are barred, or limited by, the Employee Retirement Income Security Act (ERISA), and identify all documents relating to such affirmative defense.

### Answer No. 7

ERISA law requires that a fiduciary discharge their duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. It constitutes a breach of the fiduciary's duty of loyalty and due care under ERISA for a fiduciary to place its own pecuniary interest above the interests of plan participants and beneficiaries. ERISA also enumerates several kinds of transactions which are prohibited where fiduciaries are concerned. A fiduciary cannot use its fiduciary authority, control or responsibility to cause a plan to enter into a transaction in which the fiduciary has an interest which may affect the exercise of its best judgment as a fiduciary. The fact that Mr. Forese acting as NRS president had a personal financial stake in either the plan continuing the use of NRS services or payment of the termination fee to SBERA, and that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS, raises several issues related to ERISA's prohibition of certain interested transactions.

### Answer No. 8

1.    Arthur Warren, Esq.

2.    Belmont Savings Bank

3.    Cape Cod Five Cents Savings Bank

4.    East Boston Savings Bank

5.    Woronoco Savings Bank

6.    John Boucher, President/COO of South Shore Savings Bank

UNDER THE PENALTIES OF PERJURY, THE FOREGOING IS TRUE TO THE BEST OF

MY KNOWLEDGE AND BELIEF THIS ___17th___ DAY OF DECEMBER, 2004.

John C. Boucher, President and COO
South Shore Savings Bank

Counsel for the Defendants,

James J. Marcellino, Esq. (BBO# 318840)
Nicole Colby Longton, Esq. (BBO# 657478)
McDermott Will & Emery, LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4045

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon counsel of record on this 20 th day of December, 2004.

Nicole Colby Longton, Esq. (BBO# 657478)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SAVINGS BANK EMPLOYEES RETIREMENT ASSOCIATION, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIVIL ACTION NO. 04-11545 EFH |
| EAST BOSTON SAVINGS BANK; CAPE COD FIVE CENTS SAVINGS BANK; SOUTH SHORE SAVINGS BANK; and WORONOCO SAVINGS BANK, | ) ) ) ) ) ) | |
| Defendants. | ) ) | |

## DEFENDANT WORONOCO SAVINGS BANK'S OBJECTIONS AND RESPONSES TO PLAINTIFF SBERA'S FIRST SET OF INTERROGATORIES

Pursuant to Federal Rule of Civil Procedure 33, the Defendant Woronoco Savings Bank objects and responds to Plaintiff SBERA's First Set of Interrogatories (the "Interrogatories").

## GENERAL OBJECTIONS

1.    The Defendant Woronoco Savings Bank objects to the Interrogatories to the extent that they seek discovery of documents or information beyond the reasonable scope of discovery set forth in Fed.R.Civ.P. 26(b) and to the extent that the Interrogatories seek to impose discovery obligations upon Defendant Woronoco Savings Bank which differ from or exceed those set forth in the Federal Rules of Civil Procedure.

2.    Defendant Woronoco Savings Bank objects to the Interrogatories to the extent that they seek information that is protected by the attorney client privilege or the doctrine of work product.

3.      No response or objection set forth herein may be deemed an admission that any document or information that the plaintiff requests:  (a) exists; (b) is within the possession, custody or control of the Defendant Woronoco Savings Bank; (c) is relevant to the subject matter of this lawsuit or is reasonably calculated to lead to the discovery of admissible evidence; and/or (d) is admissible in evidence in this case.

4.      Defendant Woronoco Savings Bank objects to the interrogatories to the extent that they are overbroad, vague or ambiguous, or seek information that is not reasonably calculated to lead to the discovery of admissible evidence.

## **INTERROGATORIES**

Interrogatory No. 1:

State the basis for the denials contained in Paragraph 3 of your Answer that "[t]hese assessments were intended to be a reasonable estimate of the average costs that a withdrawal imposed upon SBERA," and that "[t]he Board of Trustees passed the resolution to reduce administrative costs and risks of non-payment by withdrawing banks," and identify all documents relating to such denials.

### **Answer No. 1**

Based on our experience and knowledge in the industry Woronoco Savings Bank believed that the costs potentially incurred by SBERA as a result of its withdrawal from SBERA do not remotely approach the withdrawal penalty SBERA assessed against Woronoco Savings Bank.  Stated differently, there is no correlation between the termination fee SBERA charged Woronoco Savings Bank and the departing banks, and the costs SBERA incurred or will likely incur as a result of their withdrawal.  Because the withdrawal fees SBERA assessed were so disproportionately high relative to any incurred costs or potentially incurred costs, Woronoco

Savings Bank and the departing banks believe that the withdrawal fees were not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 2:

State the basis for the denial contained in Paragraph 4 of your Answer that "[t]he Defendant Banks have...enjoyed the benefits of the resolution," and identify all documents relating to such denial.

**Answer No. 2**

Woronoco Savings Bank denied this statement because it does not know what the benefits are to which SBERA is referring. To the extent SBERA is alluding to the fact that other departing banks have paid the penalty, Woronoco Savings Bank has determined that it received no benefit as a result of the other banks' withdrawal. To the contrary, the only benefit from the other banks' withdrawals and payments of the withdrawal fees inured directly to SBERA, because SBERA retained the difference between the amount of the penalty and the amount of the costs actually incurred. There is no evidence that any monies received from the departing banks in excess of SBERA's costs were distributed or in any way inured to the remaining banks. Accordingly, contrary to SBERA's allegations, Woronoco Savings Bank and the other defendant banks did not receive any benefits as a result of the resolution.

Interrogatory No. 3:

State the basis for the denial contained in Paragraph 11 of your Answer that "the Defendant Banks intended to withdraw, did not intend to pay the assessment due upon withdrawal, and nonetheless accepted the benefits of the assessment resolution for many years," and identify all documents relating to such denial.

**Answer No. 3**

With respect to SBERA's statement that defendant banks "accepted the benefits of the assessment resolution" defendants repeat the statement set forth in Answer No. 2. In terms of SBERA's claim that the defendant banks "...intended to withdraw, did not intend to pay the assessment due upon withdrawal...," Woronoco Savings Bank states that it thought it would have to pay reasonably assessed reimbursement for costs incurred by SBERA as a result of Woronoco Savings Bank's withdrawal.

Interrogatory No. 4:

State the basis for the first affirmative defense contained in your Answer that "Plaintiff's purported assessment violates applicable laws," and identify all documents relating to such affirmative defense.

**Answer No. 4**

SBERA breached its fiduciary duty and committed unfair practices by refusing to transfer the defendant banks' data upon their withdrawal and forcing them to incur significant legal expenses to obtain data that belonged to their plan participants. SBERA's strategy of holding the departing banks' data hostage to deter and/or complicate the banks' withdrawals is essentially commercial extortion: SBERA withheld the banks' data to cause unnecessary delays in withdrawing, to interfere with the smooth transfer of plan assets, and to force the banks to incur significant legal fees to recover what was rightfully theirs.

SBERA further breached its fiduciary duty by assessing a post-termination penalty on the withdrawing banks. SBERA's conduct in assessing such fees constitutes unfair and deceptive trade practices because the assessed withdrawal fee bears no reasonable relationship to the anticipated or actual cost to SBERA as a result of the withdrawal. The assessed fee does not

approximate the loss SBERA anticipates. While SBERA could have ascertained the actual amount it expended, and assessed a reasonable fee which approximated its actual out of pocket costs, SBERA instead imposed a disproportionately high fee to penalize Woronoco Savings Bank and defendant banks for withdrawing.

Further, ERISA prohibits plan assets from being used to pay a termination fee if the arrangement is tantamount to a penalty or if the fee is unreasonable in amount. 20 C.F.R. §2250.408b-2(c). There are also issues of fiduciary conflict under ERISA. Mr. Thomas Forese of Northeast Retirement Services ("NRS") is a plan fiduciary, yet has simultaneously acted as both President of NRS and President and Plan Administrator of SBERA. Forese's personal financial stake in either the plan continuing the use of NRS services, or payment of a termination fee to SBERA, is a conflict under ERISA because ERISA law requires that a fiduciary discharge his or her duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. Additionally, the fact that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS raises several issues related to ERISA's prohibition of certain interested transactions.

Interrogatory No. 5:

State the basis for the second affirmative defense contained in your Answer that "Plaintiff's purported assessment constitutes an impermissible penalty that does not reasonably estimate the potential damages resulting from defendants' withdrawal from the SBERA plan," and identify all documents relating to such affirmative defense.

**Answer No. 5**

SBERA demanded a withdrawal fee that bears no reasonable relationship to its anticipated or actual costs. This withdrawal fee is a penalty designed to prevent the banks from withdrawing from SBERA. There is no correlation between the termination fee SBERA charged Woronoco Savings Bank and the departing banks and the costs SBERA incurred or will likely incur as a result of the withdrawal. Because the withdrawal fee SBERA assessed was so disproportionately high relative to any incurred costs or potentially incurred costs, Woronoco Savings Bank and the departing banks believe that the withdrawal fee was not intended to reduce administrative costs, but rather to prevent banks from withdrawing.

Interrogatory No. 6:

State the basis for the third affirmative defense contained in your Answer that "Plaintiff's claim for violation of Chapter 93A is improvidently pled," and identify all documents relating to such affirmative defense.

**Answer No. 6**

SBERA's Chapter 93A claim is improvidently pled because pleading, without articulating any facts that make out an unfair or deceptive practice, or making allegations that at most amount to a breach of contract type of claim, is not sufficient for purposes of Chapter 93A. SBERA merely wanted to plead a count that allowed for multiple damages and attorney's fees; however with no articulation of a factual basis for these claims, Woronoco Savings Bank and the other defendant banks contend that it was improvidently pled.

To the extent there is a Chapter 93A violation, it is a violation by SBERA in their attempt to effectuate an unlawful self-help mechanism by holding the withdrawing banks' data hostage and continuing to insist that the banks pay an unenforceable penalty in order to withdraw.

Interrogatory No. 7:

State the basis for the fourth affirmative defense contained in your Answer that "Plaintiff's claims are barred, or limited by, the Employee Retirement Income Security Act (ERISA), and identify all documents relating to such affirmative defense.

### Answer No. 7

ERISA law requires that a fiduciary discharge their duties with respect to a plan solely in the interest of participants and for the exclusive purpose of providing benefits and defraying reasonable expenses of administration. It constitutes a breach of the fiduciary's duty of loyalty and due care under ERISA for a fiduciary to place its own pecuniary interest above the interests of plan participants and beneficiaries. ERISA also enumerates several kinds of transactions which are prohibited where fiduciaries are concerned. A fiduciary cannot use its fiduciary authority, control or responsibility to cause a plan to enter into a transaction in which the fiduciary has an interest which may affect the exercise of its best judgment as a fiduciary. The fact that Mr. Forese acting as NRS president had a personal financial stake in either the plan continuing the use of NRS services or payment of the termination fee to SBERA, and that the board of trustees that voted to approve this termination fee was comprised of several members holding a financial interest in NRS, raises several issues related to ERISA's prohibition of certain interested transactions.

Interrogatory No. 8:

Identify any person or entity (including the other Defendant Banks) with whom you discussed any of the following subjects and for each person or entity identify, list the date of each communication and the substance of such communication:

    a.    your plans for withdrawal from SBERA;

UNDER THE PENALTIES OF PERJURY, THE FOREGOING IS TRUE TO THE

BEST OF MY KNOWLEDGE AND BELIEF THIS 15# DAY OF DECEMBER, 2004.

_Angela T. Derouin_
Angela Derouin
Vice President/Human Resources
Woronoco Savings Bank

Counsel for the Defendants,

_Nicole A. Colby Longton_
James J. Marcellino, Esq. (BBO# 318840)
Nicole Colby Longton, Esq. (BBO# 657478)
McDermott Will & Emery, LLP
28 State Street
Boston, MA 02109-1775
(617) 535-4045

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon counsel of record on this 17th day of December, 2004.

_Nicole Colby Longton_
Nicole Colby Longton, Esq. (BBO# 657478)